**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**SAMUEL JONES**                                                                      **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO.:** 3:23-cv-572-HTW-LGI

**UNIFIED BRANDS, INC.**                                                           **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Samuel Jones, by and through counsel, Watson &
Norris, PLLC, and files this action to recover damages for violations of his rights under
Title VII of the Civil Rights Act of 1964 for race discrimination, 42 U.S.C. § 1981 for race
discrimination, and for age discrimination under the Age Discrimination in Employment
Act (ADEA).  In support of this cause, the Plaintiff would show unto the Court the
following facts to-wit:

**THE PARTIES**

1.     Plaintiff, Samuel Jones, is an adult male who resides in Hinds County,
Mississippi.

2.     Defendant, Unified Brands, Inc., is a Delaware corporation licensed to do
business in the state of Mississippi that may be served with process by serving its
registered agent: Corporation Service Company, 109 Executive Drive, Suite 3, Madison,
Mississippi 39110.

**JURISDICTION AND VENUE**

3.     This Court has federal question and civil rights jurisdiction for a cause of
action arising under Title VII of the Civil Rights Act of 1964, as amended.

4.     This Court has subject matter and personal jurisdiction over the Defendant

1

and venue is proper in this Court.

5.      Plaintiff timely filed her Charge of Discrimination with the EEOC on June 15, 2022, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on June 6, 2023, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of his Notice of Right to Sue.

6.      Plaintiff has been discriminated against because of his race in violation of Title VII and 42 U.S.C. § 1981 and age in violation of the ADEA.

## STATEMENT OF FACTS

7.      Plaintiff is a 61-year-old white male resident of Hinds County, Mississippi.

8.      Plaintiff was hired on January 13, 2020, as a Basic Machine Operator at United Brands, Inc. (UB).

9.      Plaintiff has approximately 40 years of Machine Operating experience.

10.     For a while, Plaintiff was the part owner of a machine and welding shop.

11.     When Plaintiff was first hired, he was brought on as a Basic Machine Operator.

12.     Plaintiff asked Second Shift Supervisor Tim Manyfield (black male) why, given his strong history of education and work experience, he was not hired on as an Advanced Machine Operator.

13.     In response, Mr. Manyfield said it was true that Plaintiff should have been brought on as an Advanced Machine Operator and that he would check into it.

14.     The hiring managers at UB, who make the payrate decisions there, are Hiring Personnel Manager Jerrold Greenwood (black male) and Salontra (LNU) (black

female).

15.    Around January 2021, Plant Manager Trey (LNU) (white male) asked Plaintiff to move from the night shift to the day shift.  Plaintiff responded that he would move from the night shift to the day shift if he could keep his $2 per hour differential pay (his base rate was $11.75/hour plus $2 differential, so he was making $13.75/hour).  Mr. Trey stated he would consider that and then get back to Plaintiff.

16.    About a week later, Mr. Trey told Plaintiff that if he (Plaintiff) moved to the day shift, he would not retain the $2 per hour differential pay.

17.    Around April 2021, three black employees (Ron Davis (black male), Tracy Henry (black male) Regina Major (black female)) were transferred from night shift to day shift and were allowed to retain their $2 per hour differential, i.e., in contrast to Plaintiff.

18.    During May or June 2021, UB hired James Jackson (black male in mid 40s).

19.    Plant Supervisor and Interim Plant Manager Pete Hartley (white male) asked Plaintiff to move to the first shift to train Mr. Jackson, then return to the second shift when that was completed.

20.    While Plaintiff was training Mr. Jackson, Mr. Jackson asked Plaintiff how much he was paid at UB.

21.    Plaintiff responded that he was paid $17.50 per hour.

22.    Mr. Jackson responded that he was being paid $19 per hour.

23.    Mr. Jackson was paid $19 per hour because he had passed a welding test.

24.    Mr. Jackson told Plaintiff that anyone could take the welding test that he

(Mr. Jackson) was administered the test when he was first hired at UB.

25.    Regarding the welding test, Mr. Jackson stated to Plaintiff, "All you have to do is run a 4-inch weld.  They even set up the machine, so you never have to adjust anything. Anyone can pass it."

26.    After that, Plaintiff requested of Welding Instructor John Coleman (black male) that he (Plaintiff) be allowed to take the welding test.

27.    Plaintiff asked Mr. Coleman if he could take the test.

28.    Mr. Coleman responded that he would get back to Plaintiff about it.

29.    Mr. Jackson, who overheard the preceding conversation, then turned to Mr. Coleman and stated, "[Plaintiff] sure is doing the work, but he sure ain't getting paid!"

30.    This statement conveyed the sentiment that Plaintiff was not being paid commensurately with his level of experience and the quality of his work.

31.    Despite his requests, Plaintiff has not been allowed to take the welding test and has not received any further pay raises.

32.    Plaintiff continues to be paid less than a similarly situated yet much less experienced and less qualified younger black employee (James Jackson).

33.    On or around February 18, 2022, Plaintiff asked Mr. Manyfield again why he was not being paid as an Advanced Machine Operator.

34.    Mr. Manyfield responded to Plaintiff that he knew he (Plaintiff) was qualified.

35.    Mr. Manyfield told Plaintiff he would sign off on the promotion from Basic to Advanced Machine Operator if Plaintiff did him (Mr. Manyfield) a favor.

36.    Mr. Manyfield then explained that Reggie (LNU) (black male) worked with the Computerized Numerically Controlled (CNC) Router and that in the coming weeks Mr. Reggie was going to be taking some time off from work because his girlfriend was pregnant.

37.    Mr. Manyfield asked Plaintiff to assist with the CNC Router, and if he did, Mr. Manyfield would approve Plaintiff' promotion to Advanced Machine Operator.

38.    Plaintiff came in early for about three weeks to improve his command of the CNC Router procedure.

39.    Then on or around March 3, 2022, Plaintiff was absent from work one day so that he could assist his disabled wife.

40.    The next day, when he returned to work, a new person (black male – name unknown) had been put in the position working with the CNC Router.

41.    Plaintiff had been displaced.

42.    Plaintiff asked Mr. Manyfield about how he had been assigned to work with the CNC Router, but Mr. Manyfield was vague and noncommittal.

43.    When Plaintiff asked about his promotion to Advanced Machine Operator, Mr. Manyfield was similarly vague and noncommittal.

44.    Since that time, Mr. Manyfield has been evasive and continues to deny Plaintiff the opportunity to be promoted to the level of Advanced Machine Operator.

45.    Currently, Plaintiff' hourly base pay rate is $16.50 per hour.    The Advanced Machine Operator position starts at a base rate of $19 per hour.

46.    On June 15, 2022, Plaintiff filed an EEOC Charge of Discrimination due to race and age.

47.    On December 12, 2022, in response to Plaintiff' Charge of Discrimination, UB submitted a Position Statement to the EEOC.

48.    UB's Position Statement alleges that welding testing and certification opportunities are present at UB, and that Plaintiff was selected after he expressed interest in it.

49.    The Statement further alleges, "However, in April 2022, Jones refused the training because he was unable or unwilling to attend training during the day on Fridays…"

50.    Plaintiff contends that he was not able to attend work generally during the day because he is responsible for taking care of his crippled wife and two special needs children.

51.    As such, he was employed to only work during the times at which he could be able, which was the second shift in the evenings.

52.    As such, Plaintiff contends that he did not refuse to do the training; rather, UB refused to accommodate him and his schedule as he could not come into work when training occurred in the mornings.

53.    Plaintiff also contends that the welding testing was not offered to him.

54.    In fact, in one instance, he asked if he could take the test but was refused the opportunity, allegedly because he was required to take prerequisite welding certification classes first.

55.    Plaintiff contends that certain black employees were allowed to take the welding test without taking these prerequisite welding certification classes, whereas he (Plaintiff) was not offered that opportunity.

6

56.    Specifically, Plaintiff contends that Mr. James Jackson (black male) was allowed to take the welding test and subsequently paid as a welder, even though he never took the prerequisite classes.

57.    UB's Position Statement alleges that "In early 2022, an opportunity for training arose on Unified Brands' router machine as the router operator on first shift was expecting a child and anticipated a prolonged absence due to parental leave. Because of operational needs and Jones' stated wish to advance, Unified Brands offered Jones an opportunity to be trained on the router machine. Unified Brands asked Jones to temporarily work the first shift to be trained by the router machine operator to become proficient before the machine operator's leave of absence. Jones would not move to the first shift. Instead, Jones asked to train on the router for a couple of hours a day before the second shift began. Unified Brands agreed. After several weeks in training, Jones was not proficient on the router machine and was not able to fully operate the machine in the operator's impending leave of absence. Unified Brands had only weeks to ensure that a router operator was properly trained on the machine to prevent an operational disruption. Thus, a newly hired machine operator, Herman Griffin (African American, male), was assigned to work with and be trained by the router machine operator during the entire first shift."

58.    Plaintiff contends that he has three years of experience in working with lathes, mills and routers and therefore was the most qualified person to hold the position when offered.

59.    Plaintiff also contends that the other workers on the router were all a different race than he was, and because of that, they did not like him working in the

position.

60.     Plaintiff contends that because of the hostile environment and the fact that he was not the same race as the other workers, he was denied the opportunity to continue to learn and grow in the position.

61.     Plaintiff contends that Mr. Herman Griffin was not qualified for the position and caused an awful fire that forced the plant to close.

62.     UB's Position Statement alleges, "Unified Brands offered Jones another opportunity for training that Jones has, yet again, failed to take advantage of. Unified Brands advised Jones that he can train on the Press Brake during periods when Jones was caught up with work on the tubing area. However, Jones has never followed up with Mr. Manyfield for additional training. This additional training opportunity is still available to Jones should he choose to take advantage of it."

63.     Plaintiff contends that from the day he first started out, he worked on the Press Break.

64.     After about two years working on the Break Press, he thought he saw a way to advance in the company by learning the tubing department.

65.     Plaintiff contends that tubing has many advanced machines that take skill to maneuver.

66.     Initially, the tubing department only required someone to be trained to use two machines.

67.     However, Plaintiff contends that once he was qualified to take on the job in tubing, the qualifications for the position changed and required one to learn three machines.

8

68.    Despite this, Plaintiff contends that the company would not let him advance to learn the three machines, despite being qualified to work on the advanced machines.

69.    As such, he wanted to qualify to work on the router again.

70.    In summary, UB's Position Statement alleges, "Unified Brands has offered Jones a number of opportunities for advancement. However, Jones has not been able or willing to take the steps necessary to advance to an Advanced Machine Operator position or be trained to take the welding test…"

71.    Plaintiff contends that he was an advanced skilled worker before being hired at UB because he had previous experience with the machines from a different position at a different company.

72.    Plaintiff contends that he would have been more willing to advance into an Advance Machine Operator position if UB had had been more flexible with accommodating his schedule limitations due to his constraints at home, i.e., tending to the needs of his wife.

73.    Additionally, Plaintiff contends that he mentioned he was willing to take the welding test but was denied the opportunity when he inquired about it.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII – RACE DISCRIMINATION

74.    Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 73 above as if fully incorporated herein.

75.    Defendant has discriminated against Plaintiff because of his race based on the facts identified above which constitutes a violation of Title VII.

76.     Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, axiety and emotional distress.

77.     The unlawful actions of Defendant complained of above were intentional malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and puntive damages pursuant to Title VII.

## COUNT II: VIOLATION OF 42 U.S.C. § 1981 – RACE DISCRIMINATION

78.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 77 above as if fully incorporated herein.

79.     Defendant has discriminated against Plaintiff because of his race based on the facts identified above which constitutes a violation of 42 U.S.C. §1981.

80.     Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, axiety and emotional distress.

81.     The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and punitive damages pursuant to 42 U.S.C. §1981.

## COUNT III:  VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT – ADEA

82.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 81 above as if fully incorporated herein.

83.     As described in more detail above, Defendant has discriminated against Plaintiff because of his age which constitutes a violation of the Age Discrimination in Employment Act.

84.     As a result, Plaintiff has suffered lost wages, benefits and other pecuniary losses.

85.    The unlawful actions of Defendant complained of above were willful and taken in reckless disregard of the statutory rights of Plaintiff thus giving rise to liquidated damages pursuant to the ADEA.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1.    Back wages and promotion; or
2.    Future wages in lieu of promotion; and
3.    Compensatory damages;
4.    Liquidated damages;
5.    Punitive damages;
6.    Attorney's fees;
7.    Lost benefits;
8.    Pre-judgment and post-judgment interest;
9.    Costs and expenses; and
10.    Such further relief as is deemed just and proper.

THIS the 1st day of September 2023.

Respectfully submitted,

SAMUEL JONES, Plaintiff

By:    /s/Louis H. Watson, Jr.
Louis H. Watson, Jr.  (MB# 9053)
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Web:  www.watsonnorris.com